# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02727-SCT

*UNITED CREDIT CORPORATION AND UNITED CREDIT CORPORATION OF MAGEE*

*v.*

*FRANCES HUBBARD*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/04/2003 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT E. SANDERS |
| ATTORNEY FOR APPELLEE: | SUZANNE GRIGGINS KEYS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 12/09/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1. This case comes to this Court from an order of the Simpson County Circuit Court denying a motion to compel arbitration. Frances Hubbard borrowed money from United Credit Corporation of Magee on two separate occasions: June 27, 2000, and May 24, 2002. Both loans contained the same arbitration agreement providing that Hubbard would relinquish her right to a jury trial if a dispute arose involving either loan.

¶2. On January 3, 2003, Hubbard filed suit against United Credit Corporation alleging several causes of action including: breach of fiduciary duties, breach of implied covenants of good faith and fair dealing, fraudulent misrepresentation and/or omission, negligent

misrepresentation and/or omission, civil conspiracy, negligence and unconscionability. After UCC responded to the complaint, United Credit Corporation of Magee ( UCCM) filed a motion to intervene as defendant, in accordance with Miss. R. Civ. P. 24(a), and for order compelling arbitration.

¶3.     Attached to this motion are exhibits A and B.  Exhibit A is an affidavit of the acting secretary/treasurer of UCC, who is also the acting secretary/treasurer of UCCM. This affidavit was to support the intervention of UCCM.  Exhibit B is a copy of the arbitration agreement at issue.

¶4.     Hubbard filed a response to UCCM's motion asking the court to allow UCCM to intervene in the action and not compel Hubbard to arbitrate this matter.  Included in this response were three exhibits A, B and C, as well as Hubbard's contention that arbitration should not be allowed.  Exhibit A is a copy of the June 27th loan agreement; exhibit B is the affidavit of Frances Hubbard stating her ignorance of arbitration; exhibit C is a copy of the American Arbitration Association's rules and procedures.

¶5.     The circuit court allowed the intervention of UCCM as the proper defendant in the suit. On the other hand, the circuit court denied the motion to compel arbitration, finding that the defendants did not make an "adequate showing that the [p]laintiff voluntarily and knowingly agreed to waive her rights and agree to arbitration."  UCC & UCCM appeal from the denial of the motion.

**DISCUSSION**

¶6.     Notwithstanding the lack of a final judgment or a grant of a petition for interlocutory

2

appeal, this Court has jurisdiction over an appeal from a denial of a motion to compel arbitration. ***Tupelo Auto Sales, Ltd. v. Scott***, 844 So.2d 1167, 1170 (Miss. 2003). In ***Scott***, this Court adopted the procedure of the Federal Arbitration Act and established a bright-line rule that an appeal may be taken from an order denying a motion to compel arbitration. ***Id.***

¶7.     The standard of review for a denied motion to compel arbitration is de novo. ***Id.*** at 1169 (citing ***East Ford, Inc. v. Taylor***, 826 So. 2d 709, 713 (Miss. 2002)).

> **I.      Whether the Circuit Court Erred by Denying the Motion to Compel Arbitration.**

>> **A.      Did Hubbard's Signature Constitute a Voluntary and Knowing Representation of Her Intent Regarding Arbitration?**

¶8.     The first factor to consider is whether UCCM had the burden of proving that Hubbard acted voluntarily and knowingly when signing the arbitration agreement. The trial court found that "the [d]efendants have not made an adequate showing that the [p]laintiff voluntarily and knowingly agreed to waive her rights and agree to arbitration . . . ." "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening §  2 [of the FAA]." ***Doctor's Assocs., Inc. v. Casarotto***, 517 U.S. 681, 687, 116 S.Ct.1652, 1656, 134 L.Ed.2d 902 (1996). "Knowing and voluntary" is an element of procedural unconscionability. ***Sanderson Farms, Inc. v. Gatlin***, 848 So. 2d 828, 845 (Miss. 2003) (citing ***Entergy Miss., Inc. v. Burdette Gin Co.***, 726 So. 2d 1202, 1207 (Miss. 1998)).

¶9.     UCCM contends that normal rules of contract construction apply and that Hubbard's signature on the agreement is sufficient proof that she acted voluntarily and knowingly.

¶10.    In ***Russell v. Performance Toyota, Inc.***, 826 So. 2d 719, 726 (Miss. 2002), the plaintiff Russell signed an arbitration agreement very similar to the agreement signed by Hubbard. The agreement Russell signed was in all bold capital font and it almost immediately preceded the signature line. ***Id.*** Similarly, in the present case, immediately preceding the signature line the following clause appeared:

> **THE PARTIES UNDERSTAND THAT BY SIGNING THIS ARBITRATION AGREEMENT THEY ARE LIMITING ANY RIGHT TO PUNITIVE DAMAGES AND GIVING UP THE RIGHT TO A TRIAL IN COURT, BOTH WITH AND WITHOUT A JURY.**

(emphasis in original). Thus, there was no hidden text in the agreement, and Hubbard was not deceived by the language of the actual document that she signed. Hubbard contends that she was ignorant as to what arbitration was and the UCCM employee did not explain it to her before she signed the agreement. Even assuming these contentions are correct, it is still essentially Hubbard's duty to read and understand any document she signs because "[i]n Mississippi, a person is charged with knowing the contents of any documents that [she] executes." ***Russell***, 826 So. 2d at 726 (citing ***J.R. Watkins Co. v. Runnels***, 252 Miss. 87, 96, 172 So. 2d 567, 571 (1965) (holding that "A person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to.")). Consequently, because Hubbard signed the arbitration agreement we conclude that she voluntarily acknowledged the terms of the arbitration agreement.

### B.     Was the Arbitration Agreement Valid and Enforceable?

4

¶11. The issue raised before this Court is whether the arbitration clause in the loan agreement between Hubbard and UCCM is enforceable. Hubbard contends that the trial court did not commit reversible error when it denied the motion to compel arbitration. Hubbard bases this contention on the notion that UCCM waived its right to arbitration by participating in discovery and that the arbitration clause contained in the loan agreement is both procedurally and substantively unconscionable.

¶12. "Procedural unconscionability may be proved by showing 'a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex or legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms.'" *Taylor*, 826 So. 2d at 714. In *Taylor*, the plaintiff argued that the arbitration clause he signed was procedurally unconscionable because he did not know what arbitration was and the employee of East Ford failed to inform the plaintiff that he should read the arbitration agreement before signing it. *Id.* These facts are identical to the present case, with one important fact that is different, in *Taylor* the arbitration clause was in a font size that was less than one-third the size of the rest of the font in the document. *Id* at 716-17.

¶13. The present arbitration agreement provided language that was conspicuous because it was in all bold and capital letters. In addition, as previously stated, Hubbard was responsible for reading and understanding any document that she may sign. *Russell*, 826 So. 2d at 726 (citing *Runnels*, 252 Miss. at 96, 172 So. 2d at 571). Thus, the arbitration clause was not procedurally unconscionable and is enforceable against Hubbard.

¶14.    "Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive." *Taylor*, 826 So. 2d at 714.  This issue can be decided by looking at the plain language of the agreement. The arbitration agreement equally binds both UCCM and Hubbard.  There is no disparity in bargaining power or either party's ability to arbitrate any issue stemming from the loans made to Hubbard.  Therefore, the arbitration agreement was not substantively unconscionable because both parties were guaranteed the same rights by the agreement.

## CONCLUSION

¶15.    For the foregoing reasons, we reverse the circuit court's order denying the motion to compel arbitration, and we remand this case to the circuit court for entry of an appropriate order referring this case to arbitration in accordance with the agreement.

¶16.    **REVERSED AND REMANDED.**

**WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR.  DIAZ, GRAVES AND RANDOLPH, JJ., NOT PARTICIPATING.**